IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WESTFIELD INSURANCE COMPANY, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 13 C 6506 |
| WILLIAM R. PUGH, ET AL., | ) | |
| Defendants. | ) | |

# OPINION AND ORDER

Westfield Insurance Company ("Westfield") brings this declaratory judgment action for the purpose of resolving a dispute concerning its duty to defend and indemnify certain defendants under the terms of an automobile liability insurance policy ("the Policy") in an action initiated by defendant Jean Pugh on behalf of her minor sons in the Circuit Court of Cook County, Illinois. That action is premised on the negligence of Jean Pugh's husband, William R. Pugh, when his auto left the road and struck a concrete structure resulting in serious injuries. Westfield issued the Policy to defendant Three Fires Council, Inc. ("Three Fires").

Westfield is an Ohio corporation with its principal place of business in Westfield Center, Ohio. Defendants/counter-plaintiffs in this action, who are defendants in the Illinois action, are as follows. Three Fires is an Illinois not-for-

profit corporation that has its principal place of business in St. Charles, Illinois. Boy Scouts of America ("BSA") is a federally chartered corporation pursuant to 36 U.S.C. § 30901. BSA is a body corporate of the District of Columbia and maintains its principal place of business in Irving, Texas.[1] Naperville Presbyterian Church ("NPC") is an Illinois not-for-profit corporation, which maintains its principal place of business in Naperville, Illinois. NPC contends it is an insured under the Westfield Policy. Old Republic Insurance Company("Old Republic") is a Pennsylvania corporation with its principal place of business in Pennsylvania. Republic issued a policy of insurance to BSA. Jean Pugh and William Pugh are Illinois residents.

There is complete diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000. This court has jurisdiction of the subject matter and the parties. 28 U.S.C. §§ 1332(a)(1), 1391.

The case is before the court on the parties' cross-motions for summary judgment. The parties agree that there are no factual issues which preclude a

---

[1]It is unnecessary to decide whether BSA is a citizen solely of the District of Columbia, *see* ***Doe v. Corp. of The Ass'n of the Presiding Bishop of The Church of Jesus Christ of Latter-Day Saints***, 2009 WL 2132722 *7 & n.1 (D. Or. July 10, 2009), or also a citizen of Texas. In either event, complete diversity of citizenship is satisfied.

decision based on the documents submitted. Summary judgment pursuant to Fed. R. Civ. P. 56 is proper when the documents presented show that there is no genuine issue as to any material fact and a moving party is entitled to judgment as a matter of law. ***Hanover Ins. Co. v. N. Bldg. Co.***, 751 F.3d 788, 791 (7th Cir. 2014).

In the underlying action, Jean Pugh alleges that, on June 6, 2010, William Pugh was returning in his own automobile with his minor sons from an overnight Boy Scout camping trip in Utica, Illinois. NPC was the sponsoring entity for Troop 8, one of the Boy Scout troops operating within Three Fires. The trip was authorized and approved by Three Fires and NPC. William Pugh served as a volunteer activity leader in various capacities for Three Fires and NPC. He was returning camping equipment to NPC when his automobile left the highway, traveled into a ditch and struck a concrete support. The underlying action is based on allegations of negligence by William Pugh and vicarious liability on the part of the named defendants.

Defined terms of the Policy provide that Westfield will pay sums "an insured" must pay as damages caused by an accident and resulting from the ownership, maintenance, or use of a "covered auto." Loss conditions of the Policy

require "prompt notice" to Westfield of any accident and "immediate" delivery of any summons or legal paper concerning a claim or suit.

Westfield contends that it owes no duty to defend or indemnify Three Fires, BSA, or NPC because it was not given required notice of the accident or timely notice of the ***Pugh*** suit. It was not notified of the original complaint and summons for more than a year after suit was filed which was more than 30 months after the accident. Alternatively, Westfield contends that it has no duty to defend and there is no coverage because (1) William Pugh is not named as an insured on the Policy; (2) he was not using a "covered auto"--one that Three Fires "owned," "hired," or "borrowed;" (3) as the owner of the auto being operated, William Pugh also came within an exception to persons defined as "insured" which is applicable to covered non-owned autos; and (4) William Pugh is not alleged to be liable for the conduct of an insured.

**Notice**

The underlying accident occurred on June 6, 2010. Three Fires became aware of the event on the following day. It communicated with Old Republic, BSA's insurer, on June 21, 2010.[2] BSA became aware of the accident, opened a

[2]If Old Republic provides underlying coverage, the Westfield Policy is excess insurance.

file for investigation and prepared a "Preliminary Report of Serious Injury" on June 8, 2010.

The ***Pugh*** complaint was served on March 12, 2012. On January 25, 2013, Three Fires' risk manager forwarded the complaint to coverage counsel for review. On February 5, 2013, Three Fires was advised by counsel that coverage may exist. A Tender Letter was received by Westfield on April 1, 2013, which provided its first notice of the accident referred to in the ***Pugh*** action. This was almost three years after the underlying accident and nearly a year after the underlying lawsuit was filed.

It was the responsibility of Three Fires' Scout Executive, who chaired Three Fires' risk management committee, to provide notice to Three Fires' insurers. Because the accident involved an "unregistered volunteer," it was not thought that the Policy applied. William Pugh was the owner of the auto he was operating.

NPC Troop 8 filed a tour permit with Three Fires prior to the trip. The campsite from which William Pugh was returning was not owned by Three Fires, BSA, or NPC. Except for the issuance of a tour permit, Three Fires had no contact with the camp-out or Mr. Pugh.

An insurance policy's notice conditions impose valid prerequisites to coverage. ***Country Mut. Ins. Co. v. Livorsi Marine, Inc.***, 222 Ill. 2d 303, 856 N.E.2d 338, 343 (2006). Whether the notice was given within a reasonable time depends on the facts and circumstances of each case. Factors to consider are: (1) the language of the condition; (2) the insured's sophistication in commerce and insurance; (3) the insured's awareness of an event that may trigger coverage; and (4) the insured's diligence in ascertaining whether coverage is available; and (5) prejudice to the insurer. ***Id.*** at 343-44; ***W. Am. Ins. Co. v. Yorkville Nat'l Bank***, 238 Ill. 2d 177, 939 N.E.2d 288, 293-94 (2010); ***First Chicago Ins. Co. v. Molda***, 2015 IL App (1st) 140548, ___ N.E.3d ___, 2015 WL 3941927 *16 (June 26, 2015). If it is determined that the insured did not provide timely notice, absence of prejudice to the insurer will only overcome the lack of timeliness if the insured has a good excuse for delay or the delay was relatively brief. ***Livorsi***, 856 N.E.2d at 343-44.

Notice delays for shorter periods than in this case have been found to preclude coverage. *See* ***AU Elec., Inc. v. Harleysville Group, Inc.***, ___ F. Supp. 3d ___, 2015 WL 1091837 *7-8 (N.D. Ill March 10, 2015), *appeal dismissed*, No. 15-1722 (7th Cir. July 9, 2015) (seven-to-eight months after underlying action

filed not "as soon as practicable"); ***Philadelphia Indem. Ins. Co. v. 1801 W. Irving Park, LLC***, 2012 WL 3482260 *7-9 (N.D. Ill. Aug. 13, 2012) (ten months after underlying action filed not "as soon as practicable"); ***INA Ins. Co. of Ill. v. City of Chicago***, 62 Ill. App. 3d 80, 379 N.E.2d 34, 37-38 (1st Dist. 1978) (seventeen months after accident not "as soon as practicable").

The facts show that Three Fires and BSA are sophisticated in matters of insurance and were aware of events that can give rise to insurance coverage. After the accident, immediate contact was made with Old Republic, BSA's insurance carrier. Three Fires has a risk management group and had insurance coverage counsel in addition to the attorneys representing it in the ***Pugh*** case. BSA opened an investigation of the accident two days after it occurred. In ***Tex. Prop. & Cas. Ins. Guar. Fund v. BSA***, 947 S.W.2d 682, 684-85 (Tex. Ct. App. 1997), the court stated: "Boy Scouts operates a risk management program for itself and its more than four hundred local councils throughout the United States . . . . As part of this risk management program, the Boy Scouts determines how much insurance is needed and how the insurance should be structured."

Three Fires and BSA also argue that failure to timely notify an insurer can be justified when the insured had a reasonable belief of non-coverage. In

support of this position they cite cases in which it was found that notice delays were excused because the insured had a reasonable belief of non-coverage. *See* ***Allstate Ins. Co. v. Carioto***, 194 Ill. App. 3d 767, 55i N.E.2d 382, 389-90 (1st Dist. 1990) (psychologically disturbed 19-year-old would not know that tort claims would be covered by a parent's homeowners policy); ***Grasso v. Mid-Century Ins. Co.***, 181 Ill App. 3d 286, 556 N.E.2d 977, 979-81 (1st Dist. 1989) (ignorance of potential excess coverage for a car neither owned nor operated in an accident); ***Bhd. Mut. Ins. Co. v. Roseth***, 177 Ill. App. 3d 443, 532 N.E.2d 354, 358 (1st Dist. 1988) (ignorance that a homeowners' policy would cover a shooting away from the home); ***Rivota v. Kaplan***, 49 Ill. App. 3d 910, 364 N.E.2d 337, 345 (1st Dist. 1977) (belief that individual had been excluded from coverage by endorsement).

The holdings in the cases cited by defendants reflect lack of sophistication in matters of insurance coverage providing a reasonable explanation for delay. Three Fires and BSA are corporate entities with considerable sophistication in insurance matters. They were represented by counsel immediately after being served with the ***Pugh*** suit. Representation by counsel has

been recognized as evidence of sophistication. ***AU Elec.***, __ F. Supp. 3d at ___, 2015 WL 1091837 at *8; ***1801 W. Irving Park***, 2012 WL 3482260 at *8.

The presence or absence of prejudice may be pertinent when the insured has a good excuse for the delay or the delay was relatively brief. ***Livorsi***, 856 N.E.2d at 343-44. Neither circumstance exists in this case. There is no valid excuse for the lengthy and unreasonable delay in providing the notice required by the Policy.

**Coverage**

Three Fires is the named insured on the Policy. By an endorsement, BSA is a "designated insured."

The Business Auto coverage provisions provides liability coverage for automobiles identified as Symbols 07, 08, 09.[3] Symbol 07 identifies 23 specific automobiles, none of which is the auto William Pugh was operating at the time of the accident. Symbol 08 relates to "hired Autos Only" and Symbol 09 relates to "Nonowned Autos Only." Defendants contend coverage exists because of the provision applying to "Nonowned Autos."

---

[3]Throughout the Policy the words "you" and "your" are defined as referring to the named insured.

"Nonowned 'Autos' Only" are defined as: "Only those 'autos' you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes 'autos' owned by your 'employees,' partners (if you are a partnership), members (if you are a limited liability company), or members of their households but only while used in your business or your personal affairs." ECF [51-1] at 15.

Section II(A)(1) of the Business Auto Coverage Form relating to "Liability Coverage, provides:

> **1. Who Is an Insured**
>
> The following are "insureds."
>
> **a.** You are for any covered "auto."
>
> **b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
>
> **(1)** The owner or anyone else from whom you hire or borrow a covered "auto." This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.
>
> **(2)** Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.
>
> * * *

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

ECF [51-1] at 16.

The Policy's coverage exception for *owners* of a covered auto, including any owner or anyone else using an auto with permission is consistent with the usual legal requirement that owners of autos are required to obtain insurance coverage for their own operating liability. *Cf.* ***Coca-Cola Enter., Inc. v. ATS Enter., Inc.***, 670 F.3d 771, 774-77 (7th Cir. 2012). Similarly, employees using their own autos (presumably with insurance coverage) are excluded from coverage.

The fact that the underlying complaint alleges that William Pugh, a scouting volunteer, is an agent of Three Fires, BSA ,or NPC does not bring him within the Policy coverage. It is undisputed that he was operating an automobile he owned at the time of the accident on June 6, 2010 which excludes him and the event from coverage no matter what his exact relationship with any of the defendants was at that time of the accident. Moreover, no facts suggest that, as a volunteer participating in an outing of Troop 8 of NPC, that William Pugh was an

agent for any of the business of any insured. A representative of Three Fires referred to him as an "unregistered volunteer."

The only case cited by defendants in support of their contention that the Policy provides coverage is ***Pekin Ins. Co v. Benson,*** 306 Ill. App. 3d 367, 714 N.E.2d 559 (1st Dist. 1999). There, uninsured motorist coverage was sought under an employer's policy when a loss was sustained by an employee using her mother's auto to perform an errand for her employer. The employer's policy covered "non-owned 'autos'" defined as: "Any 'auto' you do not own, lease, hire, rent, or borrow used in connection with your garage business." ***Id.*** at 562. The policy also stated: "This includes 'autos' owned by your employees or partners or members of their households while used in your garage business." ***Id.*** Defendants argue that the nonowned auto coverage in the Westfield Policy similarly covers William Pugh because he was engaged in Three Fires business. This argument overlooks the owned-automobile exception in the Policy which applies whether or not Mr. Pugh's conduct involved Three Fires business. There was no such exception in the ***Benson*** case.

Based on the undisputed facts, it is concluded Westfield was not given reasonable notice of the June 6, 2010 accident or of the subsequent filing of suit as

required under the terms of the Policy. Alternatively, it is concluded that there is no coverage available to any of the defendants under the terms of the Policy.

IT IS THEREFORE ORDERED that:

(1) The motion for summary judgment of plaintiff Westfield Insurance Company [80] is granted and the cross-motions of defendants William R. Pugh, Jean Pugh, Three Fires Council, Inc, Boy Scouts of America, an Illinois Corporation, Boy Scouts of America, a District of Columbia Corporation, Naperville Presbyterian Church, an Illinois not-for-profit corporation, and Old Republic Insurance Company, a Pennsylvania corporation [77, 78] are denied.

(2) The Clerk of the Court is directed to enter judgment in favor of plaintiff-counterdefendant and against all defendants-counterplaintiffs declaring that plaintiff Westfield Insurance Company has no duty to defend or indemnify any of the defendants-counterplaintiffs under its Policy of insurance WP 3507124

in connection with the suit of ***Pugh v. Boy Scouts of America***, No. 12 L 2395 (Cir. Ct. Cook Cnty., Ill., Cnty. Dep't, Law Div.).

ENTER:

UNITED STATES DISTRICT JUDGE

DATED: SEPTEMBER 1, 2015